VICTORIA G. LOHMAN, a.k.a. VICTORIA LOHMAN IRVINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lohman v. Commissioner
Docket No. 6170-86
United States Tax Court
T.C. Memo 1989-141; 1989 Tax Ct. Memo LEXIS 141; 56 T.C.M. (CCH) 1600; T.C.M. (RIA) 89141; March 30, 1989
Thomas E. O'Sullivan, for the petitioner. Karl D. Zufelt, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income tax for her 1982 and 1983 taxable years in the amounts of $ 14,062.18 and $ 7,752.06, respectively. After concessions, the sole issue for decision is the proper tax treatment to be given *143 certain ground lease rent paid by petitioner in the years at issue. We find that petitioner's sale, reacquisition, and resale of the property involved is described by sections 1038(a)[1] and 1038(e). Further, we find that petitioner's payment of the original purchaser's rent gave rise to a debt from such purchaser to petitioner, and that such debt arose after the original sale and was secured by the property petitioner sold to, and reacquired from, such original purchaser. Accordingly, we hold that the income tax regulations promulgated under sections 1038(a) and 1038(e) provide the proper tax treatment to be given the rental payments in dispute. Further, we hold that the tax treatment so provided requires that the payments in dispute be included, on its resale, as part of the adjusted basis of the property involved. Such capitalization of the payments in dispute is required under the regulations, regardless of whether such payments may, in other circumstances, have been deductible expenses. *144 FINDINGS OF FACT The parties have submitted this case fully stipulated. The stipulated facts and attached exhibits are incorporated herein by reference. Petitioner, Victoria G. Lohman, also known as Victoria Lohman Irvine, resided in Los Angeles, California, at the time the petition in this case was filed. During or prior to 1975, petitioner acquired a long-term ground lease of real property, which property was improved by a single family dwelling used by petitioner as her personal residence until 1982. For convenience, the ground lease and the improvements will be collectively referred to as the Lease. The Lease was with the Irvine Company (Lessor). The Lease, in which petitioner was referred to as "Lessee", provided in relevant part: Time is of the essence of this lease. * * * [S]hould Lessee default in the payment of any installment of rent or any other sum when due as herein provided, * * * and * * * should such default or breach * * * continue uncured for a period of thirty (30) days from and after written notice thereof by Lessor to Lessee, then and in such event, Lessor may, at its option, terminate this lease by giving Lessee written notice thereof, and thereupon *145 this lease shall cease and terminate and Lessee's rights in and to the leased premises and all buildings and other improvements thereon shall cease and end, and Lessor may, without further notice or demand or legal process, re-enter and take possession of said premises and all buildings and other improvements thereon and oust Lessee and all persons claiming under Lessee therefrom, and Lessee and all such persons shall quit and surrender possession of said premises and all buildings and other improvements thereon to Lessor * * *. [Emphasis added.] On February 16, 1982, petitioner sold the Lease to Sierra Realty Investment, Inc. (Sierra) for $ 600,000, consisting of a cash down payment of $ 225,000 and a promissory note (the Note) in the amount of $ 375,000, bearing interest at a rate of 13 percent per year. Pursuant to the terms of such transaction, which sale was required to be approved by Lessor, Sierra was accepted by Lessor as the new lessee, and was made subject to all covenants and conditions of the Lease, including those quoted above. At its sale in 1982, petitioner's adjusted basis in the Lease was $ 275,000, and the costs incurred with respect to such sale, including *146 sales commissions, were in the amount of $ 38,724. As security for the Note, petitioner took a trust deed (Trust Deed) in the Lease from Sierra. Such trust deed provided, in relevant part, as follows: The Trustor [Sierra] irrevocably grants, transfers and assigns to trustee in trust, with power of sale, that property in Orange County, California, described as: [the Lease], together with the rents, issues and profits thereof * * *. For the purpose of securing: 1. Performance of each agreement of Trustor [Sierra] incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note * * * in the principal sum of $ 375,000.00 executed by Trustor [Sierra] in favor of Beneficiary [Petitioner] or order. * * * To Protect the Security of this deed of trust, Trustor [Sierra] Agrees: * * * (4) To Pay: * * * when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto * * *. [Emphasis added.] Petitioner's Trust Deed in the Lease was subordinate to the rights of Lessor under such Lease. Accordingly, the Trust Deed served, pursuant *147 to the above-quoted language, to secure the payment of, primarily, the Note. The Trust Deed also served, however, to secure payment of any obligations of Sierra to petitioner, if such obligations arose from petitioner's payment of any incumbrance owed by Sierra where such incumbrance appeared to be superior to petitioner's interest under the Trust Deed. On February 18, 1982, petitioner purchased a new residence for herself at a cost of $ 601,785. Sierra subsequently defaulted on the Note by failing to make any payment of principal or interest to petitioner. Likewise, Sierra also defaulted on the Lease by failing to pay any rent accruing to Lessor after February 25, 1982. During the second half of 1982, in response to Sierra's default, and in an attempt to collect upon the Note, petitioner initiated proceedings to foreclose on the Trust Deed received from Sierra. Petitioner's attempt to foreclose was stayed and prevented from proceeding, however, when Sierra filed a petition in bankruptcy. On August 13, 1982, while petitioner was still prevented from being able to foreclose on the Trust Deed on the Lease, Lessor served notice upon petitioner and Sierra that the rent obligations *148 under the Lease were delinquent and that, if the overdue rents were not paid, Lessor would terminate the Lease. In order to prevent Lessor's termination of the Lease during the period that her foreclosure sale was stayed by Sierra's bankruptcy proceedings, petitioner paid Lessor, on October 4, 1982, Sierra's overdue rent for the period from February 25 to October 25, 1982, in the amount of $ 54,810. Also during 1982, and to again prevent Lessor's termination of the Lease, petitioner paid to Lessor additional rent accruing after October 25, 1982, owed by Sierra in the amount of $ 12,180. Further, for the period ending April 30, 1983, petitioner paid additional rent to Lessor in the amount of $ 25,070 to still again prevent Lessor's termination of the Lease. Petitioner's foreclosure sale under the Trust Deed was ultimately allowed to proceed on May 31, 1983. At such sale, petitioner reacquired title to the Lease by bidding $ 375,000, the face amount of the Note held by petitioner. On June 24, 1983, petitioner resold the Lease for $ 500,000 cash. For taxable years 1982 and 1983, petitioner claimed the rent payments she made as itemized deductions in the amounts of $ 66,990 and *149 $ 25,070.63, respectively. Further, by electing the personal residence rollover provisions of section 1034, petitioner reported no gain with respect to the sale of the Lease to Sierra in 1982. On her 1983 income tax return, however, petitioner reported a capital gain of $ 32,006 from the resale of the Lease. Such gain was computed by petitioner under section 1038 and the Treasury Regulations promulgated thereunder, section 1.1038-2, Income Tax Regs., as follows: Sales Price (225,000 + 500,000)
(1982 sale down payment plus
1983 cash price)
$ 725,000
Less: Selling Expenses
$ 38,709
Exclusion (section 121) [2]
62,500
91,209
Revised Adjusted Sales Price
$ 633,791
Less: Cost of New Personal Residence
601,785
Gain Recognized
$  32,006
In his notice of deficiency, respondent determined that petitioner's rent payments, *150 made to Lessor after the sale of the Lease to Sierra but before petitioner's reacquisition of the Lease, should be treated as capital expenditures increasing petitioner's basis in the Lease upon its reacquisition, and not as deductible expenses. OPINION The sole issue is to determine the proper tax treatment to be given the rental payments made by petitioner. Both parties agree that section 1038 describes petitioner's sale, reacquisition, and resale of the Lease in this case. That section provides, in relevant part, as follows: (a) GENERAL RULE. -- If -- (1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and (2) the seller of such property reacquires such property in partial or full satisfaction of such indebtedness, then * * * no gain or loss shall result to the seller from such reacquisition, and no debt shall become worthless or partially worthless as a result of such reacquisition. * * * (e) PRINCIPAL RESIDENCES. -- If -- (1) subsection (a) applies to a reacquisition of real property with respect to the *151 sale of which -- (A) an election under section 121 (relating to one-time exclusion of gain from sale of principal residence by individual who has attained age 55) is in effect, or (B) gain was not recognized under section 1034 (relating to rollover of gain on sale of principal residence); and (2) within one year after the date of the reacquisition of such property by the seller, such property is resold by him, then, under regulations prescribed by the Secretary, subsections (b), (c), and (d) of this section shall not apply to the reacquisition of such property and, for purposes of applying secitons 121 and 1034, the resale of such property shall be treated as a part of the transaction constituting the original sale of such property. The regulations prescribed with respect to the above-quoted sections in relevant part provide: In the case of a reacquisition to which this section applies, the resale of the reacquired property shall be treated, for purposes of applying sections 121 and 1034, as part of the transaction constituting the original sale of such property. In effect, the *152 reacquisition is generally disregarded pursuant to this section and, for purposes of applying sections 121 and 1034, the resale of the property is considered to constitute a sale of such property occurring on the date of the original sale of such property. [Sec. 1.1038-2(a)(2), Income Tax Reg.] Such regulations further provide: Determination of adjusted basis at time of resale. For purposes of applying sections 121 and 1034 pursuant to this section, the adjusted basis of the reacquired real property at the time of its resale shall be -- (1) The sum of -- (i) The adjusted basis of such property at the time of the original sale, * * * and (ii) Any indebtedness of the purchaser to the seller which arose subsequent to the original sale of such property and which at the time of reacquisition was secured by such property, reduced by (2) Any indebtedness of the purchaser to the seller which at the time of reacquisition was secured by the reacquired real property and which, for any taxable year ending before the taxable year in which occurs the reacquisition *153 of such property, was treated by the seller as having become worthless or partially worthless by taking a bad debt deduction under section 166(a). [Sec. 1.1038-2(e), Income Tax Regs.; emphasis added.] Pursuant to the above, respondent argues that the rental payments petitioner made for Sierra should be considered, because of the rights of subrogation which petitioner had for collection of such amounts from Sierra, to be an indebtedness of the purchaser (Sierra) secured by the property purchased and reacquired (the Lease) within the meaning of subparagraph (1)(ii) of section 1.1038-2(e), Income Tax Reg., quoted above. Accordingly, respondent contends, the payments here in dispute must be capitalized, pursuant to section 1038, as part of petitioner's adjusted basis in the Lease on its resale. If we find section 1038 to not be controlling, respondent argues, in the alternative, that the rent payments made by petitioner must be given the tax treatment provided in section 263(a)(1). That section provides in relevant part: (a) GENERAL *154 RULE -- No deduction shall be allowed for -- (1) Any amount paid out for * * * permanent improvements or betterments made to increase the value of any property or estate. Petitioner, on the other hand, asserts that the tax treatment of such lease payments is controlled by section 212(2). That section provides in relevant part: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- * * * (2) for the management, conservation, or maintenance of property held for the production of income. In so arguing, although petitioner concedes that section 1038 is applicable to her sale, reacquisition, and resale of the Lease, petitioner does not address the issue of how the specific requirements of section 1038 and the regulations thereunder effect the tax treatment to be given the rental payments here in dispute. When filing her 1983 Federal income tax return, petitioner applied section 1038, and the regulations promulgated thereunder, to determine the tax treatment to be given the sale, reacquisition, *155 and resale of the Lease. On brief, however, in advancing her argument with respect to the tax treatment to be given the payments in dispute, petitioner does not address the issue of whether or not section 1038 also governs the tax treatment of those payments. Petitioner's only argument is that section 212(2) controls the treatment of the payments in dispute because her purpose for making those payments is better described by section 212(2) than it is by section 263(a)(1). From our consideration of the parties' respective positions, we find petitioner's argument to be incomplete and, therefore, unpersuasive. If the transaction in question, i.e., the sale, reacquisition, and resale of a principle residence, is described, as is the transaction at bar, by section 1038(a) and section 1038(e), the provisions of section 1.1038-2, Income Tax Reg., are mandatory. Sec. 1.1038-2(a)(1), Income Tax Reg. Further, such regulation provides a specific method by which the adjusted basis of the property involved in the transaction is determined *156 when that property is resold within one year of its reacquisition. The computation provided by section 1.1038-2(e), Income Tax Reg., which is quoted above, dictates that certain indebtedness be capitalized, regardless of whether such indebtedness arose with respect to expenditures which could, under other circumstances, be currently deducted. That is, we find that section 1.1038-2(e), Income Tax Reg., provides that included within the adjusted basis of the property, which was, as described in section 1038(a) and section 1038(e), sold, reacquired, and resold by the taxpayer, is any indebtedness owed by the original purchaser to the taxpayer. An indebtedness of the original purchaser is so included in the taxpayer's adjusted basis, however, only if such indebtedness: (1) arose after the original sale of the property by the taxpayer; and, (2) was, at the time of the reacquisition, secured by such property. The regulation does not provide for the non-capitalization of an expenditure which, otherwise, might have been deducted. In the case at hand, we find that the debt owed by Sierra to petitioner, by reason of petitioner's *157 payment of Sierra's rent obligation under the Lease, arose subsequent to petitioner's selling the property to Sierra. Further, because of the terms of the Trust Deed, we find that such debt by Sierra to petitioner was secured by the Lease. Accordingly, we find that the debt owed by Sierra to petitioner must be included within petitioner's adjusted basis in the Lease, for purposes of computing the amount of gain/loss petitioner realized upon the resale of such Lease, pursuant to section 1.1038-2(e)(1)(ii), Income Tax Reg.
Because we find that petitioner's payment of Sierra's rent obligation under the Lease gave rise to a debt described by section 1.1038-2(e)(1)(ii), Income Tax Reg., such payments must be treated as capital expenditures as dictated by that regulation. Accordingly, we need not look to the purpose for which petitioner made the payments in question to determine whether such purpose is within the contemplation of section 212 or section 263. Section 1038, and the regulations promulgated thereunder, dictate that such expenditures be capitalized as part of petitioner's adjusted basis in the Lease, when such Lease was *158 resold, on June 24, 1983. In accordance with the foregoing and the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All sections references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 121 provides a one-time exclusion of gain from the sale of a principal residence by an individual who has attained age 55. Such exclusion is in the amount of $ 125,000, $ 62,500 in the case of a separate return filed by a married individual. Sec. 121(b)(1)↩.